THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY PETERMON, #M24669, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:20-cv-00406-GCS |
| | ) |
| BRYAN L. PURDUE, | ) |
| JEFFREY BICE, | ) |
| JANA K. CARIE, | ) |
| KEVIN KINK, | ) |
| SHANAE B. MAYBERRY, | ) |
| PATTY SNEED, | ) |
| MARY WEAVER, | ) |
| JOHN BALDWIN, | ) |
| DARREN N. WILLIAMS, | ) |
| and LT. OCHS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff Timothy Petermon is a state prisoner currently incarcerated at Menard Correctional Center ("Menard") in the Illinois Department of Corrections ("IDOC"). He filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was confined at Lawrence Correctional Center ("Lawrence"). He asserts violations of the First, Fourth, Eighth, and Fourteenth Amendments and seeks monetary damages. (Doc. 1, p. 16-21).

This case is now before the Court for a preliminary merits review of the Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise

out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On October 2, 2018, while Plaintiff was working in the kitchen at Lawrence, Defendant Purdue made a sexual comment referencing the size of Plaintiff's penis. (Doc. 1, p. 9). Plaintiff told Purdue he "didn't play like that" and asked to see a Lieutenant because he no longer felt comfortable around Purdue. Purdue responded that he planned to write Plaintiff a sexual misconduct ticket.

Plaintiff was sent back to his cell and two hours later was taken to segregation. A few hours later Plaintiff made a PREA[2] report of Purdue's sexual harassment. (Doc. 1, p. 10). Sometime after this, Plaintiff received Purdue's sexual misconduct ticket, which claimed Plaintiff had fondled himself while looking at a female officer through a window during his kitchen work shift. (Doc. 1, p. 23-24).

Plaintiff gave a detailed account of the incident with Purdue to Internal Affairs Officer Mary Weaver, who interviewed him about his PREA complaint. Weaver suggested to Plaintiff that maybe Purdue's comment was "his way of trying to relate to"

---

of magistrate judge jurisdiction, as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

2      Prison Rape Elimination Act.

Plaintiff.  (Doc. 1, p. 10).

On October 7, 2018, the Adjustment Committee (Jana Carie and Shanae Mayberry) conducted a hearing on Plaintiff's disciplinary ticket.  (Doc. 1, p. 10-11).  Plaintiff pled not guilty, requested witnesses, told the Committee of his PREA complaint, and asked them to review security camera footage.  Carie stated they would investigate.  Plaintiff was found guilty and punished with three months segregation and revocation of three months good conduct time (later reduced to one month).  (Doc. 1, p. 11, 25).  The decision was based in part on corroboration by C/O Jeffrey Bice.

Plaintiff filed a grievance, objecting that the Committee did not mention his written statement and failed to review camera footage or explain why they did not call his witnesses.  (Doc. 1, p. 11-12, 26-29).  He asserts that other inmates working in the kitchen that day would have corroborated his account, but he did not know their names because it was his first day on that job.  (Doc. 1, p. 13, 27).  Warden Kink denied the grievance, and Plaintiff's appeal was denied by Patty Sneed and John Baldwin.  (Doc. 1, p. 12, 30-31).

Plaintiff challenged the disciplinary action and sought restoration of his good time through a writ of certiorari filed in the Sangamon County Circuit Court, apparently without success.  (Doc. 1, p. 12, 32-43).

Plaintiff went on a hunger strike for 14-15 days because he felt his sexual harassment complaint and claim of innocence of the disciplinary charge were not being taken seriously.  (Doc. 1, p. 10, 12-13).  Officers Darren Williams and Ochs tried to convince Plaintiff to end his hunger strike and go to health care.  Referencing the

disciplinary hearing, Ochs told Plaintiff, "who were they gonna believe [Plaintiff] or Purdue."  (Doc. 1, p. 12).  Plaintiff notes he had never needed mental health treatment until he suffered distress from the wrongful accusation of sexual misconduct, and he had never been accused of any sexual acts before this incident.  (Doc. 1, p. 13, 15).

Plaintiff complains that he was subjected to harsh conditions while in segregation in that his access to the law library and telephone was limited, hindering his ability to work on his post-conviction petition; he was unable to engage in contact visits or college courses, or go to the dayroom and commissary; he could only go to yard three times per week; and he was given cleaning supplies and laundry access only once per week, forcing him to wear soiled clothes.  (Doc. 1, p. 14).

Plaintiff's PREA complaint was deemed unsubstantiated, and his grievance over that matter was denied.  (Doc. 1, p. 15, 44-47).

Plaintiff sets forth four substantive counts in his Complaint seeking damages, including retaliation, punishment without due process of law, cruel and unusual living conditions, and verbal sexual abuse.  (Doc. 1, p. 16-19).  His fifth count seeks indemnification by the State to pay damages.  (Doc. 1, p. 20).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: First Amendment retaliation claim against Purdue, Bice, Carie, Kink, Mayberry, Sneed, Weaver, and Baldwin based on Purdue's October 2, 2018, false disciplinary report after Plaintiff objected to Purdue's sexual comment.

> Count 2: Fourteenth Amendment due process claim against Weaver, Kink, Carie, Mayberry, Sneed, and Baldwin for finding Plaintiff guilty of the false sexual misconduct disciplinary ticket and punishing him with segregation and loss of good conduct time.
>
> Count 3: Eighth Amendment claim against Kink for subjecting Plaintiff to cruel and unusual living conditions in disciplinary segregation.
>
> Count 4: Eighth Amendment and Fourth Amendment claim against Purdue for subjecting Plaintiff to verbal sexual abuse, and against Bice, Carie, Kink, Mayberry, Sneed, Weaver, and Baldwin for ignoring Plaintiff's requests for help after he suffered that abuse.

The Court does not include Plaintiff's indemnification claim (Count V in the Complaint) as a separate count as it is unnecessary to do so. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## Count 1

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), abrogated on other grounds by *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). To prevail on a First Amendment retaliation claim, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least

---

[3] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)(noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Filing a grievance or lodging a complaint for a prison official's violation of the PREA is activity protected under the First Amendment. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). Plaintiff alleges the following sequence of events: Purdue made an inappropriate sexual remark to him; when Plaintiff voiced his discomfort to Purdue over the sexual comment and asked to see a Lieutenant, Purdue told Plaintiff that he would write him a ticket for sexual misconduct; Plaintiff initiated the PREA complaint process; Plaintiff was then served with Purdue's disciplinary ticket. This chronology arguably presents a colorable claim of retaliation.

However, a retaliation claim predicated on an allegedly false disciplinary ticket that resulted in punishment including a revocation of good conduct time may be barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). *See also Edwards v. Balisok*, 520 U.S. 641, 646-648 (1997)(extending *Heck* rule to damage claims arising from prison disciplinary actions). *Edwards* and *Heck* will prevent a prisoner from maintaining a civil rights lawsuit for damages if a judgment in favor of the prisoner would necessarily imply that he was wrongly disciplined with a loss of good time – unless the inmate has first obtained an order or judgment invalidating the good-time revocation. *See Antoine v. Ramos*, No. 11-1807, 497 Fed. Appx. 631, 634-635 (7th Cir. Dec. 5, 2012)(citing *Edwards*, 520 U.S. at 647-648; *Moore v. Mahone,* 652 F.3d 722, 723 (7th Cir. 2011)). That is the case here.

Plaintiff's retaliation claim directly challenges the validity of the sexual misconduct charge against him on the basis that Purdue lied and Plaintiff is innocent. If Plaintiff were to prevail on his claim that Purdue's disciplinary ticket was fabricated and was issued only to retaliate against Plaintiff for filing a PREA complaint (or for stating his plan to report Purdue's comment to a superior officer), a judgment in Plaintiff's favor on this retaliation claim would mean that the disciplinary "conviction" was invalid.

Plaintiff challenged the disciplinary action through the prison's administrative grievance process without success. He further challenged the loss of his good conduct time by filing a petition in state court, but he does not disclose the outcome of that action. The Complaint states that his three-month good time sanction was reduced to only one month but does not explain how that occurred. Even if his good time loss was reduced to one month, that does not eliminate the punishment altogether and does not remove the *Heck/Edwards* bar. For this reason, Count 1 will be dismissed without prejudice. *See, e.g.*, *Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011)(noting that *Heck*-barred claim should be dismissed without prejudice so plaintiff may pursue it in the event the underlying conviction/disciplinary sanction is invalidated).

However, Plaintiff will be allowed to amend his Complaint to re-plead the retaliation claim in Count 1 against Purdue, if facts exist to demonstrate that he has succeeded in invalidating or expunging the revocation of his good conduct credits.

### Count 2

The Complaint does not support a viable due process claim based on the imposition of punishment after Plaintiff was found guilty of the allegedly false

disciplinary ticket. The filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded appropriate procedural protections. Such protections include: advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows and to present documentary evidence in defending against the charge, and a written statement of the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Due process also requires that a disciplinary decision be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Prisoners have a right "to be free from arbitrary actions of prison officials[.]" *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). However, the existence of procedural requirements provide sufficient protection against arbitrary actions taken by a correctional officer, such as issuing the inmate a fabricated conduct violation.

Plaintiff complains that Carie and Mayberry did not call or investigate his witnesses, did not review security camera evidence, and did not address his written statement in its decision. In essence, he challenges the sufficiency of the evidence against him. Plaintiff did not provide the names of the potential inmate witnesses who were working with him in the kitchen because he did not know them. He also indicates that the hearing officers did not interview the woman officer he was allegedly looking at through a window. However, even if these witnesses or the video surveillance might have provided some exculpatory evidence in Plaintiff's favor (and Plaintiff supplies no affidavits or other proof indicating that such evidence would show his innocence), this

would not support a due process claim so long as the hearing panel had *some* evidence before it to support the finding of guilt. The Court's role is not to re-weigh the evidence, but merely to assess whether the committee had some evidence supporting its ruling. *See, e.g.*, *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007)(stating that "once the meager threshold has been crossed our inquiry ends"). In this case, Carie and Mayberry relied on the statements of Purdue and Bice corroborating the charge that Plaintiff was fondling himself. This meets the low threshold of "some evidence" in support of the finding of guilt.

Even if the Court were to find that the disciplinary proceedings did not comport with procedural due process requirements, Plaintiff cannot proceed with a Fourteenth Amendment claim at this juncture. The revocation of good conduct credit implicates a liberty interest because it affects the length of Plaintiff's sentence. However, as explained under Count 1, the doctrine of *Heck v. Humphrey* prevents Plaintiff from seeking money damages for lost good conduct time from a disciplinary "conviction" that has not been invalidated or reversed.

Notably, an inmate may seek restoration of good conduct credits through a federal habeas corpus action, but a habeas case can only be maintained after the prisoner has first exhausted his remedies through the Illinois state courts. *See, e.g., Heck*, 512 U.S. at 480-481. Illinois courts have recognized a mandamus action pursuant to 735 Illinois Compiled Statutes § 5/14-101, *et seq.*, as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. Ct. App. 2004)(citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.

Ct. App. 1981)).

Further, the facts do not support a viable due process claim based on Plaintiff's three-month confinement in disciplinary segregation. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997)(noting that in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").

The 90-day duration of Plaintiff's segregation is not long enough to trigger due process concerns, particularly in the context of his 31-year sentence.[4] *See, e.g.*, *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-744 (7th Cir. 2013)(stating that six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights")(quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-698 (7th Cir. 2009)); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)(indicating that 70 days in segregation is "a relatively short period when one considers [plaintiff's] 12 year prison sentence"). Finally, the segregation conditions Plaintiff describes – limited access to the law library, telephone, yard, dayroom, and commissary – do not come close to the "atypical and significant hardship" that would implicate a liberty interest. Such conditions appear to be no harsher than what Plaintiff would have faced if he had been held in non-punitive

---

[4]  *See* https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Feb. 18, 2021). *See also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006)(noting that a court may judicially notice public records available on government websites) (collecting cases).

segregation.  *See Hardaway*, 734 F.3d at 744.

For these reasons, Plaintiff fails to state a due process claim upon which relief may be granted.  Count 2 shall be dismissed without prejudice.

### Count 3

Plaintiff's Eighth Amendment claim for unconstitutional living conditions during his three months of punitive segregation also fails.  The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime.  *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)(citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *See Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

None of the segregation conditions Plaintiff describes (curtailed access to the law library and telephone, denial of contact visits, inability to participate in classes, diminished access to the yard, dayroom, commissary, laundry, and cleaning supplies) rise to the level of a constitutional violation.  While Plaintiff states he had only three changes of clothing and had to wear "soiled" clothes because he could only wash his clothes once a week, he had access to hygiene items and some soap, and does not claim that his health was endangered.  He complains of the limited access to out-of-cell exercise opportunities but does not claim that he was denied all such access or that it affected his health.  Accordingly, Count 3 does not set forth a claim upon which relief may be granted and will be dismissed without prejudice.

**Count 4**

This claim is based on Purdue's verbal sexual comment about Plaintiff's genitals on October 2, 2018.  Verbal harassment standing alone, even of a sexual or racial nature, does not constitute cruel and unusual punishment.  *See DeWalt*, 224 F.3d at 612.  However, calculated, malicious harassment without penological justification may be actionable under the Eighth Amendment.  *See Hudson v. Palmer*, 468 U.S. 517, 528-530 (1984).  *See also Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015)(noting that sexual harassment accompanied by physical conduct, which caused psychological trauma and placed plaintiff in danger of assault, stated Eighth Amendment claim); *Chatman v. Ill. Dept. of Corr.*, No. 16-3646, 685 Fed. Appx. 487, 489 (7th Cir. May 12, 2017)(stating that "[p]rison authorities violate the Eighth Amendment when they treat inmates in a way that is motivated by a desire to harass or humiliate or intended to humiliate and cause psychological pain") (internal quotations and citations omitted).

In Plaintiff's case, he describes only one incident of verbal sexual harassment by Purdue, which was not accompanied by any physical threat or conduct likely to expose Plaintiff to danger.  While the Court in no way condones the alleged remarks, this single event does not rise to the level of a constitutional violation.

Furthermore, while Plaintiff invokes the Fourth Amendment in connection with this count, he does not articulate how Purdue's remark amounted to a Fourth Amendment due process violation, and the Court can discern none.  Count 4 shall also be dismissed without prejudice.

To summarize, because none of Plaintiff's claims survive threshold review under 28 U.S.C. § 1915A, the Complaint (Doc. 1) will be dismissed in its entirety. As noted above, however, Plaintiff will be given an opportunity to re-plead Count 1.

### MOTION FOR COUNSEL

Plaintiff has filed a motion for recruitment of counsel. (Doc. 7). The dismissal of the Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-867 (7th Cir. 2013). In determining whether to recruit counsel, the Court considers two factors: whether the Plaintiff has made reasonable attempts to secure counsel on his own, and whether the Plaintiff is capable of litigating on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has made some effort to obtain counsel by contacting 2 law firms; only 1 responded to decline representation. (Doc. 7, p. 3, 5-9). This may represent a reasonable attempt to seek counsel. Next, the Court must examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013)(quoting *Pruitt*, 503 F.3d at 655).

The Court finds that Plaintiff is competent to represent himself at this pleading stage. *See Navejar*, 718 F.3d at 696; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010).

Plaintiff states that he earned his G.E.D. and has taken some college courses while incarcerated. His Complaint is clear, well-organized, and competently articulates his legal claims. Most importantly, Plaintiff alone has knowledge of the facts regarding whether he has succeeded in overturning the disciplinary revocation of his good conduct credits. If he has done so, he may be able to proceed with the retaliation claim in Count 1. If not, that claim is barred by *Heck* unless and until the good conduct credits are restored. No legal training or law library access is required for Plaintiff to set forth the facts relevant to Count 1 in an amended complaint.

For these reasons, the recruitment of counsel is not warranted at this time and Plaintiff's motion (Doc. 7) is **DENIED** without prejudice.

### DISPOSITION

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A. However, if facts exist to demonstrate that Plaintiff has succeeded in invalidating, overturning, or expunging the revocation of his good conduct credits that resulted from the allegedly false disciplinary report of October 2, 2018, Plaintiff may submit an amended complaint to re-plead the retaliation claim in Count 1 against Defendant Purdue.

Accordingly, **IT IS FURTHER ORDERED** that Plaintiff shall file his First Amended Complaint, if any, within 35 days of the entry of this order (on or before March 30, 2021). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 20-cv-406-GCS. The amended complaint shall include only

the claim designated as **COUNT 1** above and shall **NOT** include Counts 2-4.

An amended complaint supersedes and replaces the original Complaint, rendering it void. *See Flannery v. Recording Indus. Assn. of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's retaliation claim and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

If Plaintiff fails to file an amended complaint within the allotted time or consistent with the instructions set forth in this Order, the action shall be dismissed without prejudice. *See* FED. R. CIV. PROC. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A.

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff files a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court

will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 23, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.02.23 15:18:26 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**